IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GRAUL'S MARKET, INC., ET AL. | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-15-3891 |
| | * | |
| NCR CORPORATION AND STORENEXT | * | |
| RETAIL TECHNOLOGIES LLC | | |
| | ****** | |

## MEMORANDUM

This is a putative class action brought against StoreNext Retail Technologies LLC and its corporate parent, NCR Corporation. Defendants have filed a motion to dismiss. The motion will be granted.

I.

A.

StoreNext and NCR (collectively referred to as "NCR") agreed to provide plaintiffs with licenses and access to NCR's payment card processing software and systems. NCR's service was intended to facilitate payment card processing for grocery-sale transactions at plaintiff's market locations. NCR's software connects with the registers at supermarket locations and records payment card swipes. It then encrypts the card information and sends it to NCR's data centers in Texas. The transaction data is routed to individual payment processors that authorize the transactions. NCR then communicates authorizations back to plaintiffs.

Plaintiffs allege that on three days NCR's data centers malfunctioned and stopped processing payment card transactions. Plaintiffs allege that "defendant's data centers continued

1

to issue transaction approvals but never passed their transaction data on through the proper payments of the payment cycle."

Plaintiffs allege that "defendants were unable to recover the transaction approval data that was lost." This "loss of transaction data" prevented plaintiffs from recovering payment for the transactions at issue. Plaintiffs further allege that NCR's authorization data caused some of plaintiff's clients to be charged more than once for single transactions and that some customers allegedly lost confidence in plaintiff's ability to process and safeguard their payment card data. Plaintiffs allegedly have expended their own resources addressing and properly processing transactions and had to hire professionals to deal with the financial consequences.

B.

Plaintiffs entered into a subscription agreement with StoreNext on June 29, 2012. николи NCR Corporation soon after purchased StoreNext and assumed its liabilities under the Subscription Agreement. The Subscription Agreement contains the following provision:

> <u>Disclaimer and Limitations</u>. StoreNext shall not be liable for any claims attributable to any errors, omissions, or other inaccuracies in the information or material contained herein. IN NO EVENT SHALL STORENEXT BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF SUCH INFORMATION, MATERIAL, AND/OR IMPORTED OR EXPORTED DATA (INCLUDING WITHOUT LIMITATION ANY DAMAGES FOR LOST OR DAMAGED FILED OR DATA, LOST PROFITS, LOST SAVINGS, OR LOSS OF BUSINESS OPPORTUNITY), EVEN IF INFORMED OF THE POSSIBILITY THEREOF IN ADVANCE. STORENEXT'S MAXIMUM LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, REGARDLESS OF LEGAL THEORY (WHETHER IN CONTRACT, TORT OR OTHERWISE), SHALL NOT EXCEED THE SUM OF FEES PAID BY CUSTOMER OVER THE IMMEDIATELY PRECEDING 12 MONTHS FOR THOSE SUBSCRIPTION SERVICES SPEICIFICALLY GIVING RISE TO THE LIABILITY.

Plaintiffs stipulated in the Subscription Agreement that "the [t]he limitations of liability included in this Section 10 are fundamental to this Agreement and have been reviewed and

bargained for by the parties, and neither party would be willing to enter into this Agreement or the business relationship contemplated hereby, unless such limitations are given effect. "

II.

Plaintiffs' motion to dismiss is based upon the provision quoted above. They assert that plaintiff's are claiming "direct, indirect, special, . . . incidental, or consequential damages arising out of the use of . . . imported or exported data," which is barred by the parties' agreement.

Plaintiffs respond by saying that the use of the word "such" in the phrase "such information, material, and/or imported or exported data" refers back to the preceding sentence. The difficulty in this contention is that the words "imported or exported data" were not used in the preceding sentence. Thus, the word "such" refers only to the words "information or material." It appears to be undisputed that the words "information and material" apply only to the information contained in the language of the contract itself. However, the words, "imported and exported data" – which follow "such information/material" by a disjunctive "and/or" are not mentioned in the preceding sentence. Thus, the doctrine of the "series qualifier canon" upon which plaintiffs rely is not applicable. Moreover, plaintiff's proposed interpretation would render the terms "imported or exported data" superfluous. *See Ewing Construction Co. v. Amerisure Ins. Co.*, 420 S.W. 3rd 30, 37 (Tex. 2014).[1]

Plaintiffs also contend that they may be able to recover under a theory of unjust enrichment because the contract renders the promises made within it illusory. That contention likewise is flawed. Texas law permits parties to "allocate risk as they see fit." *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.*, 389 S.W. 3d 802, 812 (Tex. 2012). Moreover, mutuality clearly exists because if defendants materially breached their obligations under the Agreement,

---

[1] The parties agree that Texas law applies.

3

plaintiffs would be permitted to terminate it without paying the "Early Termination Fee" called for by the Agreement.

A separate order dismissing this action is being entered herewith.

Date: 4/25/16

J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2016 APR 26 PM 1:31
CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY